UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| JUSTIN PAULIN, ) | |
| ) | |
| Movant ) | |
| v. ) | 2:10-cr-00087-GZS-1 |
| ) | 2:12-cv-00290-GZS |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

## RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION

Justin Paulin has filed a motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. (Motion, ECF No. 79.) He pleaded guilty and was convicted of conspiracy to possess with intent to distribute heroin and cocaine and conspiracy to launder money. (Amended Judgment, ECF No. 69.) In his section 2255 motion, he alleges ineffective assistance of counsel in plea negotiations with his first appointed counsel and at sentencing and on appeal with his second appointed counsel. I ordered the government to answer. (Order, ECF No. 82.) The government requests a summary dismissal on four grounds: (1) Paulin's section 2255 motion was not timely; (2) Paulin's claim that counsel was ineffective for not obtaining a plea agreement is not cognizable as a matter of law under section 2255; (3) Paulin's challenge to the sentencing guidelines as applied to the drug amounts in this case is not cognizable as a matter of law under section 2255; and (4) Paulin's ineffective assistance claim concerning the lack of a timely notice of appeal lacks a factual foundation because Paulin explicitly instructed counsel that he did not want to appeal. (Response at 9, ECF No. 97.) Because Paulin's section 2255 motion was not timely filed, I conclude that "the motion and the files and records of the case conclusively show

that the prisoner is entitled to no relief," pursuant to 28 U.S.C. 2255(b), and on that basis I recommend that the court dismiss the motion. I address the substantive grounds raised in his petition because the Government has discussed them , although I recommend that the court not reach the merits.

### FACTS AND PROCEDURAL HISTORY

Paulin pleaded guilty in October 2010 to both counts of a two-count indictment for (1) conspiracy to possess with intent to distribute in excess of 100 grams of heroin and 500 grams of cocaine, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846; and (2) conspiracy to launder monetary instruments, pursuant to 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i), based on acts that occurred in 2008 and 2009. (Prosecution Version at 1-2, ECF No. 45; Amended Judgment at 1, ECF No. 69.) The government represents that Paulin was represented by appointed counsel during the plea hearing. (Response at 2; Minute Entry, Change of Plea Hearing, ECF No. 46.)

The government represented in its prosecution version submitted before the plea hearing that if the case had proceeded to trial, it would prove beyond a reasonable doubt that Paulin bought heroin and cocaine from a drug trafficking conspiracy that was based in northeastern Massachusetts, and that he transported the drugs to Maine for further distribution. (Prosecution Version at 1.) Paulin was arrested in New Hampshire in August 2009 and found to be in possession of ten grams of suspected heroine. After receiving Miranda warnings, he admitted that he had been obtaining cocaine and heroin in Massachusetts for about one year. (Prosecution Version at 1.) Law enforcement would have testified, based on wire interceptions, that Paulin obtained more than 100 grams of heroin and more than 500 grams of cocaine from the Massachusetts-based drug conspiracy. (Prosecution Version at 2.) The presentence investigation report states that Paulin was responsible for a total of 1,614 grams of cocaine and

279 grams of heroin.  The report also states that Paulin said in a presentence interview that he had personally used as much as five grams of heroin per day between 2005 and 2009.

On the money-laundering charge, the government represented that it would prove that Paulin laundered about $12,800 in drug proceeds through an account belonging to someone else, with the help of that person and others.  (Prosecution Version at 2.)  One of the others involved deposited cash from Paulin's drug sale proceeds into the account and notified Paulin, who in turn notified the owner of that account that the money had been deposited.  The owner withdrew cash later the same day, in the same or similar amounts to the deposits, and gave the cash to Paulin.  Paulin used the withdrawn cash to make more drug purchases.  (Prosecution Version at 2-3.)

In January 2011, the attorney who represented Paulin at the plea hearing was permitted to withdraw and another attorney was appointed.  (ECF Nos. 54, 55.)  The docket shows that this second attorney represented Paulin in the sentencing hearing and through the amended judgment entered on April 27, 2011.  (Sentencing Transcript at 2, ECF No. 94.)

At sentencing, the government agreed to withdraw its recommendation for a supervisory role enhancement and counsel for Paulin in return agreed not to object to the presentence investigation report.  (Sentencing Transcript at 2-4, 6-7.)  Paulin affirmed in response to the court's inquiry at sentencing that he received a copy of the presentence investigation report, he reviewed it with counsel, and he gave his permission to counsel to forego any objections to it. (Sentencing Transcript at 6-7.)

The court noted that the sentencing guideline range was 87 to 108 months of incarceration.  (Sentencing Transcript at 15.)  Counsel sought a variance pursuant to 18 U.S.C. § 3553, on the basis that the crimes were driven by Paulin's drug addiction and the proceeds were not used for personal extravagances.  (Sentencing Transcript at 16, 18-20, 24.)

The court found the facts as set forth in the presentence investigation report, concluding that the base offense level was 28 and the plea of guilty to the money-laundering charge raised that two levels to 30. (Sentencing Transcript at 27.) Paulin's acceptance of responsibility reduced the base level to 27. (Sentencing Transcript at 27.) Paulin had a criminal history category of III, which put him in a guideline range of 87 to 108 months of imprisonment. (Sentencing Transcript at 27.)

The court stated that it had taken into account all of the factors set forth in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, Paulin's history, the seriousness of the offense, the need for a just punishment, and the need for deterrence. (Sentencing Transcript at 27-28.) The court was particularly concerned about Paulin's already significant criminal record and recounted it in detail, including multiple convictions for operating a vehicle after suspension of his license, operating after habitual offender revocations, violation of bail conditions, failure to appear in court, multiple convictions for theft, and an assault conviction. (Sentencing Transcript at 28-30.) The court noted that there were two prior attempts to provide Paulin with drug treatment. (Sentencing Transcript at 30.) The court described Paulin's criminal history as "astounding in terms of someone disregarding the rules that apply to everybody," and stated, "in my years now as a judge, it's been about ten years, I haven't seen anybody who cannot get a message the way Justin Paulin couldn't get a message . . . ." (Sentencing Transcript at 29, 31.) The court noted that although the amount involved in Paulin's money laundering made it a "peanut money laundering case" in comparison with other such cases, it was troubling to the court that Paulin involved two other persons in that scheme. (Sentencing Transcript at 31.)

At the conclusion of the sentencing hearing, the court sentenced Paulin to 100 months of imprisonment on each of the counts, to be served concurrently, followed by a term of four years

of supervised release on count one and three years on count two, to be served concurrently, and a special assessment of $200.  (Sentencing Transcript at 32-33.)  The court also recommended him for a 500-hour drug rehabilitation program.  (Sentencing Transcript at 32.)  The court informed Paulin at the end of the hearing that he had the right to appeal his conviction and sentence, and that if he wished to exercise that right, he must file a written notice of appeal within fourteen days or give up the right to an appeal.  (Sentencing Transcript at 34.)  The court asked if Paulin understood, to which he responded, "Yes sir."  (Sentencing Transcript at 34.)

On April 19, 2011, Paulin, through counsel, moved for an amended judgment, solely to request that the court recommend a designation to Fort Devens.  (Motion, ECF No. 67.)  On April 27, 2011, the court entered an amended judgment consistent with Paulin's request.  (Amended Judgment at 2; ECF No. 69.)

Paulin contests the facts concerning his communications with counsel about requesting an appeal, and he alleges ineffective assistance of counsel based on his version of the facts.  He alleges that the government fraudulently prepared the dates on the two letters between Paulin and counsel that comprise the expanded record submitted by the government pursuant to Rule 7 of the Rules Governing Section 2255 Proceedings.  (Letters Attached to Response, ECF No. 97-1; Reply at 3-4, ECF No. 99.)  One is a letter from counsel to Paulin with a date of April 7, 2011, discussing several matters beginning with "We need to know immediately whether you want to appeal the judge's sentence."  The April 7 date on that letter may have been a typographical error because the content of the letter addresses the results of the sentencing hearing that had taken place on April 11.  The other letter was handwritten by Paulin, addressed to counsel, and is undated.  It bears a stamp indicating it was received on April 22, 2011.  (Letters, ECF No. 97-1.)

5

In that letter, Paulin begins with "I do not wish to appeal," and goes on to discuss other matters Paulin sought to address with counsel. (Letters, ECF No. 97-1.)

In addition, Paulin contests the government's request for a dismissal by attaching to his reply five letters from him to counsel and a statement by him. (ECF Nos. 99-1 through 99-6.) The first two letters are both dated May 1, 2011, and the third is undated but states in the body of the letter that "it's been 3 months since Sentencing," so this letter was purportedly written well after the May 1 letters; all three of these letters consist of inquiries as to whether counsel had filed his appeal. (ECF Nos. 99-1 through 99-3.) The fourth letter to counsel is dated October 5, 2011, and states among other things that if Paulin did not get a response by January he would file his own appeal. (ECF No. 99-4.) The fifth letter to counsel is dated March 16, 2012, and states that he filed an appeal on his own, but states that "[a]ccording to the docket you are still my lawyer and not as of yet dismissed." (ECF No. 99-5.) The statement is dated April 20, 2013, and states that Paulin asked counsel to file a timely appeal, but did not hear back, and "was forced to file" his own appeal. Paulin asserts in his reply that while he was at Fort Devens, he wrote to counsel, and after he was transferred to Fort Dix, he had greater access to the law library and "jailhouse lawyers" who informed him of his rights. (Reply at 2.) He does not state when he was transferred from Fort Devens to Fort Dix. (Reply at 2.)

Paulin, acting pro se, filed an untimely notice of appeal about nine months after the amended judgment was entered. The notice was dated February 2, 2012, and the filing was entered on the docket on February 6, 2012. (ECF No. 71.)

The First Circuit Court of Appeals entered a judgment on March 29, 2012, granting the government's request to dismiss the appeal as untimely. (Judgment, USCA; ECF No. 76.) The First Circuit noted that Paulin failed to respond to the court's earlier order to show cause why the

appeal should not be dismissed as untimely and stated that Paulin's assertion of an ineffective assistance of counsel claim should be addressed in a habeas petition rather than a direct appeal. (Judgment at 1.)  The First Circuit added, "we note that defendant should act promptly if he chooses to file a section 2255 petition," and cited the statute of limitations, 28 U.S.C. § 2255(f). (Judgment at 1.)  The First Circuit's mandate was entered on April 20, 2012, pursuant to F.R. App. P. 41(a). (Mandate, ECF No. 77.)  Paulin states that he received notice of the dismissal of his appeal at the end of April 2012.  (Reply at 5.)  Paulin filed his section 2255 motion on September 21, 2012.  (Motion, ECF No. 79.)

## DISCUSSION

1. **Timeliness**

I address the statute of limitations first, and then equitable tolling.  The statute provides for a one-year limitations period for section 2255 motions.  28 U.S.C. § 2255(f).  The limitations period is measured from the latest of four dates; the one applicable here is "the date on which the judgment of conviction becomes final."  Id. at 2255(f)(1).  Paulin has not alleged any facts or made any arguments that invoke any of the start dates provided in subsections 2255(f)(2), (3), or (4).  See Barreto-Barreto v. United States, 551 F.3d 95, 99-100 (1st Cir. 2008) (noting that undeveloped arguments are deemed waived).

The First Circuit has held that an appealed conviction is final when a petition for certiorari is denied.  Turner v. United States, 699 F.3d 578, 582 (1st Cir. 2012).  Although the First Circuit apparently has not yet decided the issue of when an unappealed judgment is final, the Second Circuit has held that "an unappealed federal criminal judgment becomes final when the time for filing a direct appeal expires."  Moshier v. United States, 402 F.3d 116, 118 (2d Cir. 2005); see also Martinez-Serrano v. United States, 3:11-cv-01077-JAF; 3:07-cr-00453-JAF-9, 2012 WL 6016663, at *1, 2012 U.S. Dist. Lexis 171941, at *3-5 (D. P.R. Nov. 30, 2012)

7

(collecting cases and noting that although the Supreme Court and the First Circuit had apparently not yet decided the issue, most if not all other circuit courts that have addressed the issue have held that an unappealed federal criminal conviction is final when the time for filing an appeal expires); but see Mendoza-Miguel v. United States, 7:10-cv-00205-BO; 7:08-cr-00127-BO-1, 2010 WL 5353970, at *1-2, 2010 U.S. Dist. Lexis 135077, at *3-4 (E.D. N.C. Dec. 21, 2000) (collecting cases and noting that circuit courts are split, citing United States v. Sanders, 247 F.3d 139, 142 (4th Cir. 2001) (holding that an unappealed judgment of conviction becomes final on the date the district court enters judgment)).  I follow what appears to be the majority rule that an unappealed conviction is final when the time for filing an appeal has expired.  See Moshier, 402 F.3d at 118.

In this case, the judgment became final on April 27, 2011, which was the date on which the amended judgment was entered.  The appeal period began the next day, i.e., on April 28, 2011, and expired fourteen days later, on Thursday, May 12, 2011, pursuant to Fed. R. App. P. 4(b)(1)(A)(i).  Paulin's untimely appeal did not toll the statutory limitations period.  Although the First Circuit appears not to have decided the issue yet, at least one circuit has held that a defendant's "untimely notices of appeal did not delay the onset of the limitations period."  United States v. Terrones-Lopez, 447 Fed. Appx. 882, 885 (10th Cir. 2011).

Thus, the one-year limitations period to file a section 2255 motion started on May 13, 2011, which was the day after the appeal period expired, and it expired on Monday, May 14, 2012, which was the first business day after the anniversary date of the start of the limitations period.  See Rules Governing Section 2255 Proceedings 12 (applying the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure to the extent they are not inconsistent with section 2255 or the accompanying rules); Fed. R. Civ. P. 6(a); Lattimore v. Dubois, 311

F.3d 46, 54 (1st Cir. 2002) ("When a limitations period is measured in years, the last day for instituting the action is traditionally the anniversary date of the start of the limitations period."). Absent equitable tolling, Paulin's section 2255 filing on September 21, 2012, was untimely.

Paulin argues for equitable tolling on the basis that he acted diligently, and extraordinary circumstances prevented a timely section 2255 filing. Specifically, he asserts that (1) the government fraudulently misdated the two letters that comprise the government's expanded record, i.e., the letters in which counsel asked Paulin if he wanted to appeal and Paulin responded that he did not, and (2) counsel failed to respond to Paulin's later letters in which he said he did want to appeal. (Reply at 1-7.) Neither of these two allegations sheds any light on Paulin's own diligence in pursuing his remedies.

The First Circuit has held that the one-year limitations period under section 2255(f) "is subject to equitable tolling in appropriate instances." Ramos-Martínez v. United States, 638 F.3d 315, 322 (1st Cir. 2011). "Equitable tolling is a doctrine that provides that in exceptional circumstances, a statute of limitations may be extended for equitable reasons not acknowledged in the statute creating the limitations period." Id. at 321 (quotation marks omitted). The petitioner has the burden of proving "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" Id. at 323 (quoting Holland v. Florida, --- U.S. ---, 130 S. Ct. 2549, 2562 (2010) (quotation marks omitted)). Alternatively, equitable tolling may be available if a petitioner was "materially misled into missing the deadline." Barreto-Barreto, 551 F.3d at 101. The burden is on the petitioner to establish the basis for equitable tolling. Ramos-Martínez, 638 F.3d at 323.

I conclude that this is not an appropriate case in which to apply equitable tolling. Paulin's factual assertion that the government fraudulently misdated two letters between Paulin

9

and counsel concerns events that allegedly happened in responding to this motion and has nothing to do with Paulin's own diligence in filing his notice of appeal or his Section 2255 motion. Additionally, I can think of no reason why the government would intentionally and fraudulently misdate those letters, particularly because the April 7, 2011, date appeared in a letter in which counsel discussed what happened at the April 11, 2011, sentencing hearing, and thus the April 7 date seems to have been simply a typographical error. Furthermore, any discrepancy in the date on the letter and its contents is of no consequence to the issue of equitable tolling of the one-year limitations period for section 2255 motions. It is apparent from the content of counsel's letter that it was written and sent sometime shortly after the sentencing hearing. The date on Paulin's response to counsel's inquiry indicates that both counsel's letter and his response were written and sent sometime between the hearing date of April 11, 2011, and the date stamp on Paulin's response, which was April 22, 2011. Both letters appear to have predated the May 12, 2011, expiration date of the appeal period and thus also predate the beginning of the limitations period under section 2255.

Although Paulin may have asserted a dispute of fact over the dates on the later letters that he filed with his reply, any such dispute is not material to the timing of his filing of the section 2255 motion. Assuming that Paulin's later letters and his statement (ECF Nos. 99-1 through 99-6) provided convincing proof that he did not know an appeal had not been filed until he filed his own in February 2012, he still fails to account for his months-long delay in filing the section 2255 motion after the First Circuit warned him to file it promptly. See Carey v. United States, 50 F.3d 1097 at 1098 (1st Cir. 1995) ("While genuine issues of material fact may not be resolved without a hearing, a hearing is not required where a habeas motion (1) is inadequate on its face,

or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.").

Whatever happened before the First Circuit's dismissal of his appeal, Paulin was by no means misled about the running of the section 2255 limitations period in the wake of his receipt of notice of that dismissal—receipt he admits he had by the end of April 2012. See Barreto-Barreto, 551 F.3d at 101. "What the petitioner knew and when he knew it are important in assessing his diligence." Ramos-Martínez, 638 F.3d at 324. From the time he says he received notice of the dismissal of his appeal, which was at the end of April 2012 (Reply at 5), he had at least two weeks to file a timely section 2255 motion, because the limitations period did not expire until May 14, 2012. Furthermore his own expanded record conclusively establishes that he knew or should have known as early as the time of his fourth letter to counsel in October 2011 that counsel had failed to pursue his appeal, and thus the grounds for his ineffective assistance claim were already known to him. However, he did not file this motion to vacate until September 2012. This situation is unlike that in Holland, in which the petitioner prepared and filed his own habeas petition pro se the same day he discovered that the limitations period had expired. 130 S. Ct. at 2565. I conclude that Paulin has failed to demonstrate that he was diligent in pursuing his rights, and he has failed to raise any extraordinary circumstances that would cause him to miss the section 2255 one-year filing deadline. Equitable tolling is not warranted under the facts of this case.

### 2. The Substantive Grounds

On the merits, Paulin makes three arguments for a claim of ineffective assistance of counsel; I discuss these in chronological order according to the procedural history of this case. Ultimately,

however, I recommend that the court dismiss the petition for lack of timeliness and not reach the merits.

### a. Failure to obtain a plea agreement

Paulin claims as ground two of the motion that counsel failed to obtain a plea agreement. (Motion at 5-6; Reply at 7-8.) Although the government points out that this could not be a claim against Paulin's second appointed counsel because that counsel did not represent Paulin during the plea hearing (Response at 18), this is a claim of ineffective assistance directed against his first appointed counsel, i.e., the attorney who represented Paulin at the plea hearing.

To prevail on a claim of ineffective assistance, a petitioner must demonstrate two things: (1) seriously deficient performance by counsel and (2) prejudice to the defense as a result of counsel's deficient performance. Strickland v. Washington, 466 U.S. 668, 687 (1984). The Supreme Court has held that "as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012). In this case, however, Paulin states that no plea was either offered by the prosecution or pursued by counsel. (Motion at 5.) Furthermore, the Supreme Court held in Frye that

> to complete a showing of Strickland prejudice, defendants who have shown a reasonable probability they would have accepted [a] plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented.

Id. at 1410. Given the court's comments at sentencing about Paulin's extensive criminal record and repeated displays of disrespect for the rule of law, Paulin cannot make a convincing showing that there is a reasonable probability that the court would have imposed a more favorable sentence pursuant to a plea recommendation from the Government, should counsel have even

been able to obtain such a recommendation. See id. Consequently, Paulin fails to meet the second part of the Strickland requirement, which is that he demonstrate prejudice. For the same reason, he likely would not be able to demonstrate that the failure to seek a plea agreement amounts to seriously deficient performance by counsel, but I need not and do not address that issue. See Strickland, 466 U.S. at 670 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.")

    **b. Failure to object at sentencing to the amount of heroin**

Grounds one and four of Paulin's motion assert a claim for ineffective assistance of counsel based on counsel's failure to object at sentencing to the amount of heroin that formed his base offense level at sentencing. (Motion at 4, 10; Reply at 8.) It appears that he is arguing that the amount of five grams per day for personal use referred to in the January 2011 revised presentence investigation report should not have been included in the amount used to classify the charge as one of possession with intent to distribute. (Motion at 10.) To the extent Paulin's fourth ground asserts that the court misapplied the sentencing guidelines, rather than that counsel provided ineffective assistance by failing to object, such a claim is not cognizable because it falls "far short of the 'miscarriage of justice' standard" that applies to nonconstitutional, nonjurisdictional collateral claims. See Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994).

As to the claim of ineffective assistance for failure to object to the amount of heroin attributed to Paulin's personal use, I conclude that Paulin has demonstrated neither deficient performance by counsel nor prejudice. I first review the total amounts supporting the conviction. The presentence investigation report states that Paulin was responsible for a total of 1,614 grams of cocaine and 279 grams of heroin, which in the report was converted to a total drug quantity of

601.8 kilograms of marijuana equivalent.  "The sentencing guidelines provide a formula for converting drugs into equivalent units of marijuana for sentencing purposes." United States v. Mills, 710 F.3d 5, 9 (1st Cir. 2013); see U.S.S.G. § 2D1.1 cmt. n.10(E) (2010) (since recodified as cmt. n.8(D) (2012).  The Probation Office assessed a base offense level of 28, consistent with a marijuana equivalent of at least 400 but less than 700 kilograms, pursuant to the 2010 edition of the United States Sentencing Guidelines, which was used in the presentence investigation report and was applicable at the time of the sentencing hearing in April 2011.  See U.S.S.G. § 2D1.1(c)(6) (2010).[1]  (Sentencing Transcript at 27.)

According to the presentence investigation report, Paulin admitted in a presentencing interview to the facts supporting personal use of the up to five grams of heroin a day between 2005 and 2009.  Paulin affirmed in response to the court's inquiry at sentencing that he received a copy of that report, he reviewed it with counsel, and he gave his permission to counsel to forego any objections to it.  (Sentencing Transcript at 6-7.)  The First Circuit has held that when there was a conspiracy and the defendant was a member, "purchases for personal use are relevant in determining the quantity of drugs that the defendant knew were distributed by the conspiracy." United States v. Innamorati, 996 F.2d 456, 492 (1st Cir. 1993).  Counsel's failure to object was reasonable.

Counsel's use of the argument at sentencing that Paulin was personally using heroin and selling cocaine to support his heroin addiction was also reasonable.  (Sentencing Transcript at 18-19.)  "Under the first prong of Strickland, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." Knight v.

---

[1]  The base offense level for these quantities would be the same under the current edition.  See U.S.S.G. § 2D1.1(c)(6) (2012).

Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689)).  Based on Paulin's own factual admissions and his affirmation to the court that he gave his permission to his attorney to forego any objection to the presentence investigation report, there is no factual basis for a claim of ineffective assistance.

   c. **Failure to file a direct appeal**

Paulin claims in grounds one, three, and elsewhere in the motion that counsel failed to respond to either him or the Court of Appeals regarding his request for an appeal, and counsel failed to file a direct appeal in a timely manner.  (Motion at 4, 7-8.)  I conclude that the expanded record does generate an issue of fact concerning counsel's failure to file an appeal.  Paulin was on notice, based on the court's admonition at the sentencing hearing, that if he wanted to appeal he had fourteen days from that date to file or he would lose his right to appeal.  (Sentencing Transcript at 34.) Three of Paulin's letters to counsel were dated within the appeal period including the one stating that he did not want to appeal. (ECF Nos. 97-1, 99-1, 99-2.)   Paulin's statement accompanying his letters indicates that he communicated his request for a timely appeal through "various written correspondences," but he nowhere points to any written correspondence that explicitly supports that statement.  (ECF No. 99-6.)  However, he does point to a series of letters to counsel asking about the status of his appeal and to communications from the First Circuit notifying him about their receipt of his untimely appeal and advising him to advise them of his position regarding counsel.  (See ECF No. 79-1, 99-1 through 99-5).

I conclude that the expanded record may also generate an issue of fact concerning whether Paulin asked counsel to file a motion for an extension of time to file an appeal, pursuant to Fed. R. App. P. 4(b)(4).  The two May 1st letters from Paulin to counsel purport to have been dated within 30 days from the expiration of the fourteen-day appeal period from the entry of the

15

original judgment[2] and could be interpreted as a request that counsel file a motion for an extension of time to file a notice of appeal. The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000). "At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Id. Although Paulin explicitly instructed counsel that he did not want to file an appeal in one of his letters, I have no reason not to accept as true, at this stage of the proceedings, that Paulin's May 1st letters communicated his change of mind to counsel and that this gave rise to a duty of counsel to file the Rule 4(b)(4) motion if he received the letter after the fourteen day appeal period had elapsed. See Owens, 483 F.3d at 57. Paulin has adequately alleged deficient performance on this point. See Roe, 528 U.S. at 477. He has also adequately alleged prejudice on the basis that he was deprived of an appeal he otherwise would have taken. See id. at 484-85. A defendant "is not required to specify the issues he would have raised on appeal or show that those issues are meritorious." See United States v. Restrepo, 1:01-cr-10151-MLW-5; 1:07-cv-12403-MLW, 2013 WL 1285510, at *3, 2013 U.S. Dist. Lexis 48663, at *9 (D. Mass. Mar. 26, 2013) (citing Roe, 528 U.S. at 486). If Paulin's section 2255 motion had been timely, he may have been entitled to an evidentiary hearing. See id. However, I conclude that the court need not reach this issue because Paulin's section 2255 motion was not timely.

---

[2] Paulin's appeal period was actually extended to May 12, 2011, because counsel, acting on his behalf, filed a motion to amend the judgment to obtain a recommendation for a designation to Fort Devens. (ECF No. 67.) The motion was granted, and an amended judgment entered on April 26, 2011, extending the appeal period beyond the original fourteen days. Thus the two letters dated May 1, 2011, were at least dated within the actual appeal period.

16

## CONCLUSION

For the reasons above I recommend that the court summarily deny this 28 U.S.C. § 2255 motion, and I recommend that the court deny a certificate of appealability because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

May 24, 2013

/s/Margaret J. Kravchuk
U.S. Magistrate Judge